659 So.2d 1069 (1995)
Roger Lee CHERRY, Appellant,
v.
STATE of Florida, Appellee.
No. 83773.
Supreme Court of Florida.
August 31, 1995.
*1070 Scott Barker, Richard Schneeback and Craig Stewart of Holland & Hart, Denver, CO, and Matthew Lawry and Anne Jacobs of Volunteer Lawyers' Resource Center of Florida, Inc., Tallahassee, for appellant.
Robert A. Butterworth, Attorney General, and Kenneth S. Nunnelley, Assistant Attorney General, Daytona Beach, for appellee.
PER CURIAM.
Roger Lee Cherry, a prisoner under sentence of death, appeals the trial court's summary denial of his motion for post-conviction relief pursuant to Florida Rule of Criminal Procedure 3.850. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. For the reasons expressed below, we affirm in part and reverse in part and remand for an evidentiary hearing consistent with this opinion.

Procedural Status
A more detailed description of the facts of this case is contained in Cherry v. State, 544 So.2d 184 (Fla. 1989), cert. denied, 494 U.S. 1090, 110 S.Ct. 1835, 108 L.Ed.2d 963 (1990), wherein we affirmed Cherry's convictions and death sentence arising out of the murder of Esther Wayne. We vacated Cherry's *1071 death sentence as to the death of Leonard Wayne and remanded for the imposition of a sentence of life without parole for twenty-five years. As to the non-capital offenses, we vacated and remanded for resentencing under the guidelines.
In his 3.850 motion, Cherry raised twenty claims which are renumbered before this Court. The trial court summarily denied Cherry's motion without conducting an evidentiary hearing, and also denied Cherry's motion to disqualify the trial judge from presiding over the 3.850 proceedings. The trial court ruled that claims 1, 3, 4, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, and 20 could have been and should have been raised on direct appeal and therefore are not cognizable under rule 3.850. As to Cherry's ineffective assistance of counsel claims raised in claims 3 and 6, the trial court ruled that the claims as stated in the petition did not meet the standards set forth in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). On claim 7, alleging the withholding of evidence by the State, the trial court found that Cherry had established neither materiality nor prejudice under the standard set out in Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

Appeal
In this appeal, Cherry raises nineteen claims.[1] (These issues are referred to in Roman numeral style in the trial court's order.)

Disqualification of Judge
As a preliminary matter, we find no error in the trial judge's ruling on the appellant's motion seeking to disqualify the judge in these post-conviction proceedings. We agree that Cherry's allegations in his motion for *1072 disqualification are insufficient as a matter of law, and we also reject appellant's claim that the trial court's order on the motion was so improper as to furnish an additional ground for disqualification.

Remaining Claims
As to Cherry's remaining claims, we find no error in the trial court's holding that claims 1, 3, 4, 7, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, and 19 (as numbered by the appellant on appeal) are procedurally barred because they could have been raised on direct appeal. Doyle v. State, 526 So.2d 909, 911 (Fla. 1988).
To counter the procedural bar to some of these issues, Cherry has couched his claim on appeal, in the alternative, in terms of ineffective assistance of counsel in failing to preserve or raise those claims. We have consistently recognized that "[a]llegations of ineffective assistance cannot be used to circumvent the rule that post-conviction proceedings cannot serve as a second appeal." Medina v. State, 573 So.2d 293, 295 (Fla. 1990). In this instance, because we believe that Cherry is attempting to do exactly this, we reject those claims and affirm the trial court's summary denial thereof.

Exclusion of Witness
Cherry alleged that newly discovered evidence will show a different reason than that asserted at trial for the trial judge's refusal to allow a witness's testimony at trial. However, on direct appeal Cherry specifically raised the issue of the trial court's exclusion of this witness. We rejected Cherry's contention that the trial court's decision to exclude this witness's testimony violated Richardson v. State, 246 So.2d 771 (Fla. 1971). Although Cherry has rephrased this claim in terms of newly discovered evidence, we find it inappropriate for Cherry to use a different argument to collaterally relitigate an evidentiary issue already known and specifically considered and rejected on direct appeal. Medina, 573 So.2d at 295. In addition, to the extent that this can be characterized as a different issue, we find the allegations insufficient as a matter of law to merit relief.

Guilt Phase Performance of Counsel
Next, we consider the trial court's ruling finding the allegations of ineffective assistance of trial counsel, based on counsel's alleged inadequate performance during the guilt phase of his trial, insufficient to meet the standards set forth under the two-prong test of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under Strickland, a defendant must establish two components in order to demonstrate that counsel was ineffective: (1) counsel's performance was deficient and (2) counsel's deficient performance prejudiced the defense. As to the first prong, the defendant must establish that "counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment." Id. at 686, 104 S.Ct. at 2063. As to the second prong, the defendant must establish that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. "[U]nless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable." Id. Applying this standard, we find no error by the trial court in rejecting these claims.
Cherry has simply failed to provide sufficient allegations demonstrating both a deficient performance and the probability of a different outcome based on the alleged deficiencies. For instance, Cherry alleges that trial counsel failed to investigate issues relating to Cherry's mental status which would have revealed his incompetency to testify and his intoxication at the time of the offense. At trial, counsel's theory of the case was that Cherry had not committed these crimes. Hence, an involuntary intoxication defense would actually have been inconsistent with Cherry's defense that he had not committed these murders, as well as Cherry's own testimony on the issue of intoxication. Further, counsel was successful in having a mental health expert appointed, and that expert found Cherry competent.
Cherry also claims that counsel was ineffective for failing to present evidence that *1073 someone other than Cherry had entered the victims' home and killed them. However, during the trial, defense counsel contended that the most likely culprit was the Waynes' former son-in-law, Jack Baumgartner. Counsel vigorously questioned Baumgartner at trial concerning his troubled relationship with the Waynes. Counsel's cross-examination was obviously aimed at establishing that Baumgartner had a motive to kill the Waynes. Cherry also contends that counsel should have presented evidence that another person, James Terry, may have been the perpetrator of the murders. However, during the trial counsel did question a witness concerning her observations on the morning of the slayings, including her observations of Terry near the scene of the crime.
Applying the Strickland standard to all of these claims,[2] we agree with the trial court's conclusion that the multiple allegations simply constitute claims of disagreement with trial counsel's choices as to strategy. More importantly, Cherry has not even attempted to demonstrate that these alleged errors would have altered the outcome in this case. The standard is not how present counsel would have proceeded, in hindsight, but rather whether there was both a deficient performance and a reasonable probability of a different result. We affirm the trial court's summary denial of this claim.

Brady
Cherry next argues that, in violation of Brady v. Maryland, the State failed to turn over several pieces of evidence favorable to his defense. The trial court concluded that Cherry had demonstrated neither materiality nor prejudice under Brady. We agree with the trial court's conclusion.
In determining the effect of the State's failure to disclose exculpatory evidence, the test "is whether there is a reasonable probability that `had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" Duest v. Dugger, 555 So.2d 849, 851 (Fla. 1990) (quoting United States v. Bagley, 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481, 494 (1985)). In short, in order for Cherry to establish a Brady violation, he would have to prove the following: (1) that the State possessed evidence favorable to him; (2) that the evidence was suppressed; (3) that he did not possess the favorable evidence nor could he obtain it with any reasonable diligence; and (4) that had the evidence been disclosed to Cherry, a reasonable probability exists that the outcome of the proceedings would have been different. Hegwood v. State, 575 So.2d 170, 172 (Fla. 1991).
Cherry maintains that the State failed to provide him with information which would have revealed that Baumgartner, the Waynes' son-in-law, was in a convenience store before the murders and had told the store clerk that his in-laws wanted to evict him. Cherry claims this evidence was material because it supported his theory that Baumgartner may have been the perpetrator. In this case, the jury heard substantial testimony that Baumgartner did not get along with his in-laws. Cherry has not demonstrated that, had the eviction comment been disclosed, the outcome of the proceedings would have been different.
As to the second Brady violation, Cherry claims the State withheld photographs taken of James Terry's shoes. Cherry claims that, had the photographs been available, he would have been able to show that the treads on Terry's shoes matched the tread marks appearing on the victim's pajama bottoms. However, Cherry, in fact, had a series of photographs obtained from the Florida Department of Law Enforcement (FDLE) which depicted Terry's footprints in the sand. We have considered the other alleged Brady *1074 violations and find no error in the trial court's summary denial.

Ineffective Counsel at Penalty Phase
We reach a contrary result on the issue of whether the trial court should have granted an evidentiary hearing on Cherry's claim of ineffective assistance of counsel at the penalty phase. We find that Cherry has stated a prima facie basis for relief and is entitled to an evidentiary hearing. See Brown v. State, 596 So.2d 1026 (Fla. 1992).
Cherry claims that trial counsel presented practically no mitigating evidence at the penalty phase other than a single four-page psychiatric report which was introduced without further argument or comment. Counsel made virtually no attempt to present evidence or argue mitigating circumstances. Cherry claimed in his 3.850 motion and detailed supporting material attached that the following information was available had counsel conducted an adequate investigation of mitigating circumstances: (1) Cherry grew up in conditions of abject poverty; (2) Cherry was severely physically and emotionally abused and neglected from the time that he was an infant; (3) Cherry's mother was an alcoholic who drank during her pregnancy and throughout his life and repeatedly neglected, rejected, and abandoned him; (4) Cherry witnessed extreme violence as a child; (5) Cherry was institutionalized at a young age in a brutal and segregated juvenile institution. Cherry also specifically identifies three mental health experts in his petition who indicate that: (1) Cherry is now, and was at the time of trial, mentally retarded; (2) Cherry suffers from organic brain damage; (3) Cherry was incompetent to stand trial and to testify; (4) Cherry's history supports both statutory and nonstatutory mitigating evidence; and (5) Cherry was intoxicated at the time of the offense.
Based on the volume and detail of evidence of mitigation alleged to exist compared to the sparseness of the evidence actually presented, we agree that Cherry is entitled to an evidentiary hearing on his claims that counsel was ineffective at the penalty phase. This case is similar to the situation presented in Harvey v. Dugger, 656 So.2d 1253, 1257 (Fla. 1995), where we ordered an evidentiary hearing on a similar claim and observed:
A number of Harvey's other penalty phase claims relating to ineffectiveness of counsel do not appear to be such as would warrant relief under the prejudice prong of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). However, the cumulative effect of such claims, if proven, might bear on the ultimate determination of the effectiveness of Harvey's counsel. Therefore, in view of the fact that we have already determined to remand for an evidentiary hearing Harvey's penalty claims 2(a) and 3, we also remand his penalty claims 2(b), 2(c), 2(d), 2(e), 2(f), 2(g), and 16 for consideration at the same time.

Conclusion
We affirm the summary denial of all claims raised in the 3.850 motion, except for those claims alleging that counsel was ineffective during the penalty phase of the trial. We reverse the summary denial of those claims and remand for an evidentiary hearing.
It is so ordered.
GRIMES, C.J., and OVERTON, SHAW, KOGAN, HARDING, WELLS and ANSTEAD, JJ., concur.
NOTES
[1] (1)(a) The trial judge's failure to recuse himself from presiding over the rule 3.850 proceedings (Appellant referred to this issue as a "preliminary" matter and not as a numbered claim. For ease of reference, we have numbered this issue as "(1)(a)" and the appellant's first issue as "(1)(b)."); (1)(b) the circuit court erred in summarily denying his race discrimination claims; (2) he was denied effective assistance of counsel at the penalty phase of his trial; (3)(a) he was denied a competent mental health examination; (3)(b) trial counsel was ineffective for failing to arrange for a competent examination; (4) the circuit court erred in summarily denying his motion for appointment of forensic experts; (5) he was denied effective assistance of counsel at the guilt phase of his trial; (6) the State's failure to turn over exculpatory information in its possession before trial violated Brady; (7)(a) he was denied meaningful voir dire and a trial before an impartial jury; (7)(b) trial counsel was ineffective for failing to conduct an adequate inquiry into jurors' alleged misconduct and make an appropriate motion to exclude the jurors or for a mistrial; (8) the trial court excluded a defense witness on the improper basis that the witness's testimony would be offensive to elderly citizens; (9)(a) his first-degree murder convictions and death sentence violate the Florida Constitution and the Eighth and Fourteenth Amendments to the United States Constitution; (9)(b) trial counsel was ineffective for failing to object that his first-degree murder conviction was unconstitutional; (10) a new trial is required due to an insufficient record of the bench conferences and rulings on certain defense motions; (11)(a) the prejudicial atmosphere surrounding the trial proceedings created a risk that the death penalty was imposed in an arbitrary and capricious manner; (11)(b) trial counsel was ineffective for failing to object to the prejudicial atmosphere surrounding his trial; (12)(a) the prosecutor's improper closing argument at the penalty phase violated appellant's constitutional rights; (12)(b) trial counsel was ineffective for failing to object to the prosecutor's numerous improper comments during closing argument; (13)(a) the jury considered nonstatutory aggravating circumstances in violation of Maggard v. State, 399 So.2d 973 (Fla.), cert. denied, 454 U.S. 1059, 102 S.Ct. 610, 70 L.Ed.2d 598 (1981), and the constitution; (13)(b) trial counsel was ineffective for failing to object to the instructions that permitted the jury to consider the non-statutory aggravating factor of significant history of prior criminal activity; (14) the State and the court misled the jury into believing its sentencing verdict was merely advisory in violation of his constitutional rights; (15) his sentence of death was based upon one or more unconstitutionally obtained prior convictions; (16) the jury instructions improperly shifted the burden to him to prove that death was inappropriate; (17)(a) the prosecutor's closing argument improperly asserted that sympathy and mercy were not considerations for the jury; (17)(b) trial counsel was ineffective for failing to object to the prosecutor's closing argument and the penalty-phase jury instructions which precluded the jury from considering sympathy in recommending a sentence; (18)(a) the heinous, atrocious, or cruel instruction was unconstitutionally vague; (18)(b) trial counsel was ineffective for failing to object to the invalid jury instructions; (19) the trial court's failure to conduct an independent evaluation of Cherry's mitigating circumstances deprived him of his right to an individualized sentencing determination.
[2] These alleged errors are as follows: (1) Counsel failed to move for a change in venue; (2) Counsel failed to preserve the record; (3) Counsel failed to move for a mistrial or to inquire about juror misconduct; (4) Counsel failed to move for individual voir dire; (5) Counsel failed to request additional peremptory challenges; (6) Counsel failed to seek to disqualify the judge based on his bias against Cherry; (7) Counsel failed to challenge biased jurors; (8) Counsel failed to object to the prejudicial trial atmosphere; and (9) Counsel failed to familiarize himself with the facts of the case.