POLSTON, J.
 

 Banco Industrial de Venezuela, C.A., Miami Agency, and its subsidiary, BIV Investments and Management, Inc. (collectively referred to as “BIV”), seek review of the decision of the Third District Court of Appeal in
 
 Banco Industrial De Venezuela, C.A., Miami Agency v. de Saad,
 
 21 So.3d 46 (Fla. 3d DCA 2009).
 
 [1]
 
 For the reasons expressed below, we quash the Third District’s decision.
 

 I. BACKGROUND
 

 The following facts are set forth in the Third District’s decision:
 

 De Saad is the former vice-president and general manager of Banco [Industrial de Venezuelaj’s Miami agency, BIV. As part of an undercover sting operation involving a U.S. Customs confidential informant, de Saad was alleged to have facilitated the deposit of approximately $4 million in drug proceeds into BIV accounts. On May 19, 1998, the United States charged de Saad with ten counts of money laundering and one count of conspiracy to launder money while acting in her capacity as the vice-president of BIV. De Saad retained the services of attorney Beeler to represent her in the criminal proceedings. As part of their fee agreement, de Saad assigned Beeler her right to seek indemnification for attorney’s fees and costs under sections 607.0850(1) and (3), Florida Statutes
 
 ....[
 

 2
 

 ]
 
 After a lengthy trial in which the jury found her guilty on all counts, the trial judge granted de Saad’s motion for judgment of acquittal as to all counts finding that the United States had failed to prove all of the necessary elements of the alleged crimes. The United States filed an appeal of the trial court’s acquittal. Seven months after her acquittal, de Saad was charged and pled guilty to one count of money structuring on the condition that the government drop the appeal of the judgment of acquittal on the money laundering and conspiracy charges[
 
 3
 
 ] The government dropped
 
 *897
 
 the appeal. De Saad then sought from BIV her past wages pursuant to her contract of employment and also sought indemnification for attorney’s fees incurred in her defense of the money laundering and conspiracy charges. BIV denied both claims.
 

 De Saad then filed the present state court action against BIV. Her amended complaint seeks statutory indemnification pursuant to section 607.0850 to recover the costs and attorney’s fees in defending the money laundering charges and claims past wages based on breach of her Employment Contract with BIV. Beeler filed a complaint in intervention based on the assigned right to attorney’s fees and costs in defending de Saad on the money laundering charges. De Saad, Beeler and BIV moved for sum7 mary judgment on the indemnification claims. The trial court entered summary judgment on liability in favor of de Saad and Beeler on the statutory indemnification counts. The trial court held a bench trial on indemnification damages and awarded de Saad $2,895,096.41 on the indemnification claim and Beeler $1,636,168.13. Following the bench trial, both sides moved for summary judgment on the breach of contract claims.... On the breach of contract claims, the trial court entered final summary judgment in favor of de Saad and Beeler and awarded $1,058,023.82 to de Saad exclusively.[
 
 4
 
 ]
 

 Banco,
 
 21 So.3d at 47-48 (footnotes omitted).
 

 On appeal, BIV contended that summary judgment in favor of de Saad and Beeler on the indemnification claim was improper because a question remained as to whether the statutory requirements of indemnification were satisfied.
 
 Id.
 
 at 48. However, applying a Delaware case interpreting a Delaware indemnification statute, the Third District affirmed the trial court, explaining that “de Saad was prosecuted ‘by reason of the fact’ that she was [a] director, officer, employee, or agent of the corporation and was acquitted because she was ‘successful on the merits or otherwise.’”
 
 Id.
 
 at 49 (quoting § 607.0850(1), (3), Fla. Stat.).
 

 Before the Third District, BIV also argued that the trial court erred in granting summary judgment in favor of de Saad and Beeler on the breach of contract claim. BIV did not terminate de Saad as allowed by the employment contract but instead suspended her without pay, relying on a provision in the personnel manual that provides for suspension of an employee while charges are pending for clarification.
 
 Id.
 
 at 50. The Third District concluded that the charges against de Saad were clarified by either the United States’ filing of a superseding indictment against de Saad or by BIV’s own internal audit after de Saad’s indictment.
 
 Id.
 
 Because BIV kept de Saad on unpaid suspension rather
 
 *898
 
 than compensate or terminate her, the Third District affirmed the summary judgment on the breach of contract claim.
 
 Id.
 

 II. INDEMNIFICATION
 

 We agree with BIV that the Third District erréd in its interpretation of the statutory indemnification provisions. First, summary judgment in favor of de Saad and Beeler on the statutory indemnification claim was improper because Florida’s indemnification statute is not applicable to foreign corporations, such as Banco Industrial de Venezuela, C.A., Miami Agency, a Venezuelan bank authorized to conduct business in Florida (“Banco”). Second, even if the indemnification statute was applicable to the foreign bank, or its Florida subsidiary, BIV Investments and Management, Inc., de Saad is not entitled to statutory indemnification because she cannot satisfy the requirements of section 607.0850, Florida Statutes.
 

 Chapter 607, Florida Statutes, is the Florida Business Corporation Act, which regulates the structure and activity of Florida corporations.
 
 See
 
 § 607.0101, Fla. Stat. As used in the Act, “ ‘Corporation’ or ‘domestic corporation’ means a corporation for profit, which is not a foreign corporation, incorporated under or subject to the provisions of this act.” § 607.01401(5), Fla. Stat. In contrast, “‘Foreign corporation’ means a corporation for profit incorporated under laws other than the laws of this state.” § 607.01401(12), Fla. Stat.
 

 In some circumstances, foreign corporations are subject to regulation under this Act. Specifically, section 607.1505(1), Florida Statutes, provides that “[a] certificate of authority authorizes the foreign corporation to which it is issued to transact business in this state.” Further, section 607.1505(2), Florida Statutes, provides that a foreign corporation conducting business under a certificate of authority has rights and obligations substantially similar to those of a Florida corporation:
 

 A foreign corporation with a valid certificate of authority has the same but no greater rights and has the same but no greater privileges as, and
 
 except as otherwise provided by this act
 
 is subject to the same duties, restrictions, penalties, and liabilities now or later imposed on, a domestic corporation of like character.
 

 (Emphasis added.)
 

 Section 607.1505(3), Florida Statutes, then sets out the following important exception: “This act does not authorize this state to regulate the organization or internal affairs of a foreign corporation authorized to transact business in this state.” Therefore, although Banco is a foreign corporation that operates under a certificate of authority and possesses the same rights, privileges, duties, restrictions, penalties, and liabilities as Florida corporations subject to the entire Act, Banco is not subject to regulation by the Act in matters of its organization or internal affairs. Corporate indemnification is one such matter of internal affairs.
 
 See Chatlos Found., Inc. v. D’Arata,
 
 882 So.2d 1021, 1023 (Fla. 5th DCA 2004) (“Indemnification of corporate directors, like the fiduciary obligations of corporate directors, is an ‘internal affair’ of a corporation and is therefore subject to the law of the state of incorporation.” (quoting
 
 Davis & Cox v. Summa Corp.,
 
 751 F.2d 1507, 1527 (9th Cir.1985))). Accordingly, pursuant to section 607.1505(3), Banco is not subject to Florida’s indemnification provision, section 607.0850.
 

 De Saad argues that Banco subjected itself to section 607.0850 by executing an employment contract with de Saad, which stipulates the following: “This contract shall be governed solely and exclusively by the laws of the State of Florida, specifically those of Dade County, Florida.... Therefore, it is agreed that the [laws] of
 
 *899
 
 other States and countries shall not be applicable to this Contract or to the Employee/Employer relationship governed hereby.” However, this choice-of-law clause simply makes Banco subject to the laws of the State of Florida. And under the laws of Florida described above, Banco is a foreign corporation that is not subject to regulation of its internal affairs, including corporate indemnification.
 

 Moreover, even if Florida’s indemnification statute applied to BIV, de Saad would still not be entitled to indemnification because the requirements of the statute are not satisfied.
 

 Section 607.0850(1), Florida Statutes, provides that a corporation may indemnify its agents for legal expenses under certain conditions:
 

 A corporation shall have power to indemnify any person who was or is a party to any proceeding (other than an action by, or in the right of, the corporation),
 
 by reason of the fact that
 
 he or she is or was a director, officer, employee, or agent of the corporation or is or was serving at the request of the corporation as a director, officer, employee, or agent of another corporation, partnership, joint venture, trust, or other enterprise against liability incurred in connection with such proceeding, including any appeal thereof,
 
 if he or she acted in good faith and in a manner he or she reasonably believed to be in, or not opposed to, the best interests of the corporation and,
 
 with respect to any criminal action or proceeding, had no reasonable cause to believe his or her conduct was unlawful. The termination of any proceeding by judgment, order, settlement, or conviction or upon a plea of nolo contendere or its equivalent shall not, of itself, create a presumption that the person did not act in good faith and in a manner which he or she reasonably believed to be in, or not opposed to, the best interests of the corporation or, with respect to any criminal action or proceeding, had reasonable cause to believe that his or her conduct was unlawful.
 

 (Emphasis added.) Subsection (8) lists the types of expenses for which such an agent must be indemnified:
 

 To the extent that a director, officer, employee, or agent of a corporation has been successful on the merits or otherwise in defense of any proceeding referred to in subsection (1) or subsection (2), or in defense of any claim, issue, or matter therein, he or she shall be indemnified against expenses actually and reasonably incurred by him or her in connection therewith.
 

 Read together, subsections (1) and (3) set out the relevant framework for permissive and mandatory indemnification of corporate agents. Subsection (1) describes when it is within the power of a corporation to indemnify its agent. In comparison, subsection (3) describes when a corporation must indemnify its agent.
 

 Certainly, there are circumstances that satisfy subsection (1) but not subsection (3) — i.e., when a corporation has the right to indemnify a corporate agent but the agent is not necessarily entitled to indemnification. The reverse is not true. A corporate agent cannot be entitled to indemnification when the corporation is powerless to indemnify her. Therefore, the requirements of subsection (1) must be met before an agent seeking indemnification can obtain mandatory indemnification under subsection (3). In other words, the mandatory indemnification provided for by subsection (3) may be reached only after the criteria for subsection (1) indemnification are established.
 
 See
 
 § 607.0850(3), Fla. Stat. (“To the extent that a director, officer, employee, or agent of a corporation has been successful on the merits or other
 
 *900
 
 wise
 
 in defense of any proceeding referred to in subsection (1)
 
 or subsection (2), or in defense of any claim, issue, or matter therein, he or she shall be indemnified against expenses actually and reasonably incurred by him or her in connection therewith.”) (emphasis added).
 

 Here, de Saad did not meet the requirements for indemnification under subsection (1) because she was not prosecuted “by reason of the fact” that she was a corporate officer.
 
 See
 
 § 607.0850(1), Fla. Stat. Although de Saad may have had access to the laundered funds due to her position as a corporate officer, she was prosecuted for her conduct, not on account of her position. This conduct was not required by her position as a corporate officer and was, in fact, contrary to corporate policy.
 

 But even if the prosecution were interpreted to be “by reason of the fact” that de Saad was a corporate officer, other requirements for indemnification under subsection (1) are not met. De Saad did not “act[ ] in good faith and in a manner ... she reasonably believed to be in, or not opposed to, the best interests of the corporation,” as evidenced by her guilty plea as well as the fact that her actions were contrary to corporate policy. § 607.0850(1), Fla. Stat. Furthermore, unlawful monetary transactions made through the corporation could not be “reasonably believed to be in, or not opposed to, the best interests of the corporation.”
 
 Id.
 
 Nor could such transactions constitute “act[ing] in good faith.”
 
 Id.
 

 Accordingly, because de Saad was not eligible for indemnification under subsection (1), she also was not entitled to indemnification under subsection (3). Therefore, summary judgment on the indemnification claim was improperly granted in favor of de Saad and Beeler.
 

 III. BREACH OF CONTRACT
 

 BIV also urges this Court to reverse the final summary judgment in favor of de Saad and Beeler on the breach of contract claim, including the $1,058,023.82 award to de Saad against BIV. We do so because de Saad’s employment contract gave BIV the right to suspend de Saad until the merits of the pending charges were clarified by her plea to money structuring.
 

 On December 1, 1997, de Saad entered into an employment contract with BIV. Section E.2 of the personnel manual, which is incorporated into the employment contract, specifies certain grounds for immediate dismissal or for suspension “[pjending [cjlarification of [cjharges.” One of the grounds listed is “[cjonclusive evidence of dishonesty or involvement in a misdemean- or or felony.”
 

 Based upon these provisions, BIVs board of directors convened and executed a resolution to suspend de Saad immediately after her arrest without pay “with the understanding that if the findings against her taking place in U.S. Courts are negative, her remunerative payment will be acknowledged retroactively.” However, de Saad continued to maintain her innocence about all of her conduct even after the December 20, 1999, jury verdict finding her guilty on all counts and the subsequent judgment of acquittal. Ultimately, de Saad’s suspension continued because the merits of the charges were not clarified until de Saad pled guilty to the money structuring charge in February 2001, which was after the employment contract expired. And because clarification did not occur until that time, BIV did not breach the contract by keeping de Saad on unpaid suspension.
 

 In contrast, the Third District concluded that the charges against de Saad were clarified by the United States’ filing of the
 
 *901
 
 superseding indictment or BIV’s internal audit after the indictment.
 
 Banco,
 
 21 So.3d at 50. The Third District reached this conclusion by construing “clarif[y]” to mean that BIV simply needed to understand the nature of the charges against de Saad.
 
 See id.
 
 However, in this employment contract, the plain meaning of “clarify” is “to make clear” and “to free (the mind or understanding) of confusion, doubt or uncertainty.”
 
 Webster’s Third New International Dictionary Unabridged
 
 415 (1981). In this case, BIV was not clear and free from doubt or uncertainty about the pending charges until de Saad pled guilty to money structuring. Therefore, summary judgment in favor of de Saad and Beeler on the breach of contract claim was improper.
 

 IV. CONCLUSION
 

 As explained above, Florida’s indemnification statute does not apply to foreign corporations, such as Banco. And even if the statute did apply to BIV, de Saad would not be entitled to statutory indemnification because she cannot satisfy the requirements of section 607.0850(1). Furthermore, because clarification of the charges did not occur until de Saad pled guilty to money structuring, BIV did not breach the employment contract by keeping de Saad on unpaid suspension. Accordingly, we quash the Third District’s contrary decision and remand with instructions for entry of final judgment in favor of BIV against the claims of de Saad and Beeler in accordance with this opinion.
 

 It is so ordered.
 

 CANADY, C.J, and PARIENTE, LEWIS, QUINCE, LABARGA, and PERRY, JJ., concur.
 

 [1]
 

 . We have jurisdiction.
 
 See
 
 art. V, § 3(b)(3), Fla. Const.
 

 [2]
 

 . Section 607.0850, Florida Statutes, has remained unchanged since 1989 with the exception of gender neutrality amendments in 1997.
 
 See
 
 ch. 89-154, § 93, Laws of Fla.; ch. 97-102, § 30, Laws of Fla.
 

 [3]
 

 .In connection with her guilty plea, de Saad was fined $50,000, sentenced to one year of probation, and agreed never to seek or accept employment with any financial institution in the United States without the prior express written consent of the U.S. Attorneys’ Office.
 

 [4]
 

 . Additionally, the trial court entered final judgment in favor of de Saad and Beeler on BIV’s counterclaim for damages for expenses, costs, and attorney's fees. Specifically, the trial court stated that BIV "takes nothing by this action and Plaintiff, Esperanza de Saad, and Intervenor, Joseph Beeler, P.A., shall go hence without day.” Because BIV failed to raise any specific issues regarding this ruling before the Third District and this Court, BIV has waived all grounds for contesting the final judgment on its counterclaim.
 
 See
 
 Philip J. Padovano,
 
 Florida Appellate Practice
 
 § 8:10 (2011 ed.). BIV’s mention of the counterclaim in its initial briefs to the Third District and this Court in a footnote is insufficient.
 
 See Shere v. State,
 
 742 So.2d 215, 217 n. 6 (Fla.1999) (noting that claims raised in appellate brief that contain no argument or grounds for reversal are deemed abandoned). Accordingly, any cross-appeal issues raised by de Saad and Beeler in the Third District regarding BIV's counterclaim are moot.