642 So.2d 1074 (1994)
Sean Patrick ESTY, Appellant,
v.
STATE of Florida, Appellee.
No. 80598.
Supreme Court of Florida.
August 11, 1994.
Rehearing Denied October 5, 1994.
*1075 Nancy A. Daniels, Public Defender, and David A. Davis, Asst. Public Defender, Second Judicial Circuit, Tallahassee, for appellant.
Robert A. Butterworth, Atty. Gen., and Richard B. Martell, Asst. Atty. Gen., Tallahassee, for appellee.
PER CURIAM.
Sean Patrick Esty appeals his conviction of first-degree murder and sentence of death. We have jurisdiction pursuant to article V, section 3(b)(1) of the Florida Constitution. For the reasons set forth below, we affirm the conviction, but reverse the death sentence.
Esty was charged with the first-degree murder of his fifteen-year-old former girl-friend, Lauren Ramsey. Ramsey's body was discovered about noon on December 24, 1991, at Langdon Battery at Fort Pickens on Pensacola Beach. Ramsey was last seen alive on Sunday evening, December 22, when she went to bed at her grandmother's house. The door to Ramsey's bedroom was locked when her grandmother tried to enter the room on Monday morning. The second story window to Ramsey's room was open and the screen was in the yard.
According to the pathologist's testimony at trial, Ramsey's head had been severely beaten with a blunt object. She also had been stabbed in the neck, chest, forearm, and hands; one stab wound to the chest punctured the right lung. She also sustained a number of defensive wounds to the hands and forearms. Additional wounds to the face and left ear appeared to be inflicted by a machete, based upon the parallel lines of the wound. The pathologist testified that he believed the stab wounds were inflicted before the head wounds, as the stab wounds had bled copiously. He also testified that Ramsey *1076 died from the blunt trauma injuries to her head and face.
The medical examiner also testified that Ramsey was pregnant. Other testimony revealed that Ramsey had learned of her pregnancy from her doctor on Friday, December 20. The doctor warned Ramsey that she would tell Ramsey's mother about the pregnancy if Ramsey did not disclose it herself by the following Monday.
A broken baseball bat containing Esty's palm print and a butcher knife were found near the body. An analysis of the bat indicated that it had been painted black with pink paint added to certain areas. Paint fragments consistent with those on the bat were found on Ramsey's clothes. Esty's friends testified that he owned a black bat studded with pink tacks and that he told them that he had thrown it away either before or after the murder.
A piece of Mickey Mouse Christmas wrapping paper with the notation "To Sean, Love, Lauren" was also found at the scene by a civilian several weeks after the murder. A friend of Ramsey's testified that she had seen Ramsey wrap a troll doll for Esty in this manner. A troll doll, along with several cards from Ramsey, were recovered during a search of Esty's car. A handwriting expert identified the writing on the wrapping paper and the greeting cards as Ramsey's.
A machete, which was found in nearby brush several weeks after the murder, had a spot of blue paint consistent with that found on one of Esty's boffo sticks.[1] A search of Esty's car revealed a sales receipt for a butcher knife dated December 22 at 10:16 p.m. The police also seized a trench coat and a pair of boots from Esty's bedroom. The coat contained a bloodstain pattern consistent with a medium velocity spatter from a beating. Bloodstains on both the coat and the boots matched Ramsey's blood enzyme type. DNA testing of the stain on the coat further determined that the stain matched Ramsey's genotype.
On December 23, Esty sought medical attention for a cut on his hand. Esty claimed that he had been cut on the hand while "boffoing" with a friend the night before. Esty also testified that he had torn apart the boffo stick that had injured him and thrown it off a bridge.
Although the jury recommended a life sentence, the judge overrode the recommendation and imposed a death sentence. The judge found the two aggravating circumstances of heinous, atrocious, or cruel (HAC)[2] and cold, calculated, and premeditated without any pretense of moral or legal justification (CCP)[3] and the mitigating circumstance of no significant history of prior criminal activity.[4] The judge also found that the nonstatutory mitigating factors urged by Esty were not established by the record, but even if they had been they were entitled to little or no weight in mitigation.

GUILT PHASE
Esty raises nine issues related to the guilt phase of the proceedings: 1) denial of his motion to suppress evidence seized pursuant to a search warrant; 2) denial of a challenge for cause of a prospective juror; 3) denial of his motion for change of venue; 4) admission of evidence relating to his sexual relationship with Ramsey; 5) admission of evidence that Ramsey was pregnant; 6) admission of opinion testimony of State's blood identification expert without proper predicate under section 90.705(2), Florida Statutes (1991); 7) failure to conduct a Richardson[5] inquiry before allowing the State's rebuttal expert to testify about the time of death; 8) failure to grant a mistrial after prosecutor made improper comments during closing argument in the guilt phase; and 9) error in instructing the jury on reasonable doubt.
As his first claim, Esty argues that the trial court erred in refusing to suppress certain *1077 physical evidence because the affidavit upon which the search warrant was based contained misleading information or omitted material facts. Esty's motion to suppress alleged that the affidavit was deficient in nine specific respects. Seven witnesses testified at the suppression hearing, including the officer who drew up the affidavit. The search warrant affidavit was also introduced into evidence at the hearing. After considering all of the testimony, the judge found that there were two material omissions and that testimony regarding a vehicle observed leaving the murder scene should not have been included in the affidavit. The court found no willful fraud or omission of material facts as to the other alleged deficiencies. After considering the affidavit in light of these additions and deletions, the judge determined that there was still sufficient probable cause to justify the issuance of the search warrant. Thus, the judge denied the motion to suppress.
We find no error in the judge's determination that only two of the alleged deficiencies constituted material omissions and that the testimony regarding the vehicle should have been excluded. We also note that the judge applied the correct standard in reviewing the affidavit. "[W]hen a question is raised as to material omissions from the search warrant affidavit, the court reviewing the matter should consider the affidavit as though the omitted facts were included and then evaluate the presence of probable cause in light of the added facts." Sotolongo v. State, 530 So.2d 514, 516 (Fla. 2d DCA 1988); accord Power v. State, 605 So.2d 856, 862 (Fla. 1992), cert. denied, ___ U.S. ___, 113 S.Ct. 1863, 123 L.Ed.2d. 483 (1993). We agree with the judge's ruling that the affidavit still contained sufficient information to constitute probable cause. Thus, we find no error in denying Esty's motion to suppress.
The next claim involves the denial of a challenge for cause of prospective juror Johnson. Defense counsel challenged Johnson on the basis that he could not read and thus would be at a disadvantage during deliberations when the other jurors would have written instructions to consult.[6] After defense counsel admitted to the court that he was unaware of any case law that requires literacy in order to serve on a jury, the court denied the challenge. We find no error in the denial of the challenge for cause. Although the court premised its denial upon defense counsel's assertion that Johnson could not read, we find no record evidence that Johnson was actually illiterate. In reply to a question from defense counsel during voir dire, Johnson stated that his wife filled out his juror questionnaire. Counsel did not ask Johnson why his wife had completed the questionnaire. Nor did counsel make any further inquiry as to Johnson's ability to read. Based upon this record, we find no error in denying this challenge for cause.
Esty also claims that the court improperly denied his motion for a change of venue because extensive media coverage of the murder prevented the empaneling of a fair and impartial jury. An application for a change of venue is addressed to the sound discretion of the trial court and that ruling will not be overturned absent a palpable abuse of discretion. Geralds v. State, 601 So.2d 1157, 1159 (Fla. 1992). Esty has not demonstrated "palpable" abuse in the instant case. The record reveals that seven of the jurors who actually served indicated that they had some prior knowledge of the case, but all stated affirmatively and unequivocally that they could put aside that knowledge and decide the case solely on the evidence presented at trial. The remaining five jurors had indicated that they had no prior knowledge of the case at all. Thus, we find no merit to this claim.
Esty next argues that the trial court erred in admitting the following evidence: that Ramsey was pregnant (claim 5); that Esty had sexual intercourse with Ramsey approximately one month before the murder (claim 4); and that about five months before the murder Esty told a friend that he hated *1078 Ramsey and asked the friend to get Ramsey pregnant in order to spite her (claim 4). Esty contends that this evidence was not relevant to the case and was only introduced to prove his bad character. The State contends that the evidence of Ramsey's pregnancy and Esty's sexual relationship with her are relevant to prove motive in this case and that the evidence of Esty's statements to his friend indicate hostility toward Ramsey from which premeditation can be inferred.
Defense counsel raised no objection when the State questioned several witnesses about Ramsey's pregnancy or her sexual relationship with Esty. In fact, on cross-examination defense counsel also questioned the witnesses about the pregnancy. Thus, complaints about this testimony have not been preserved for appeal. The contemporaneous objection rule applies to evidence about other crimes, and, even if "a prior motion in limine has been denied, the failure to object at the time collateral crime evidence is introduced waives the issue for appellate review." Correll v. State, 523 So.2d 562, 566 (Fla.), cert. denied, 488 U.S. 871, 109 S.Ct. 183, 102 L.Ed.2d 152 (1988). However, even assuming that a proper objection had been made, we find this testimony relevant to show Esty's motivation in killing Ramsey.
Although Esty preserved the issue of the admissibility of the friend's testimony by raising an objection, we find no merit to that claim. That testimony revealed Esty's hostility toward the victim and was relevant to prove premeditation. Premeditation may be proven by circumstantial evidence, including the presence or absence of adequate provocation and previous difficulties between the parties. See Holton v. State, 573 So.2d 284, 289 (Fla. 1990), cert. denied, 500 U.S. 960, 111 S.Ct. 2275, 114 L.Ed.2d 726 (1991).
Esty's next argument attacks the admission of opinion testimony by an expert in the field of DNA testing. The expert testified that in his opinion a bloodstain on Esty's coat matched Ramsey's genetic type. When the prosecutor asked the frequency that such a match would occur in the population, defense counsel objected on the basis that a proper predicate had not been established under section 90.705(2), Florida Statutes (1991).[7] At the bench, defense counsel stated that the population studies which the expert relied upon in forming his opinion were hearsay. The trial court overruled the objection and permitted the expert to testify that only 2% of the population could match the DNA sample from the coat.
An expert may testify without disclosing the facts or data upon which an opinion is based. § 90.705(1), Fla. Stat. (1991). However, the expert must specify those facts or data upon cross-examination. Id. This procedure raises the possibility that an expert might make an unsupported statement of opinion that is so prejudicial that cross-examination before the jury would not erase the resulting bias. See Cirack v. State, 201 So.2d 706, 710 (Fla. 1967); see also Charles W. Ehrhardt, Florida Evidence, § 705.1 (1993 ed.). Thus, section 90.705(2) provides that "[p]rior to the witness giving his opinion, a party against whom the opinion or inference is offered may conduct a voir dire examination of the witness directed to the underlying facts or data for his opinion." (Emphasis added).
In the instant case, defense counsel properly raised the issue of the data underlying the expert's opinion and should have been permitted to conduct a voir dire examination of the expert as to that data. Thus, the court erred in telling defense counsel to "just observe and bear with it." However, we find this error to be harmless beyond a reasonable *1079 doubt. State v. DiGuilio, 491 So.2d 1129 (Fla. 1986). During cross-examination, defense counsel questioned the expert fairly extensively about the population studies which had been published in a recognized technical journal. Defense counsel did not establish "prima facie evidence that the expert [did] not have a sufficient basis for his opinion." § 90.705(2). Thus, the opinion testimony would have been admitted even if the court had permitted voir dire examination of the expert prior to his testimony.
Esty claims that the State committed a discovery violation by disclosing an additional rebuttal witness only days before trial commenced and that the trial judge erred by not conducting a Richardson inquiry before allowing the witness to testify. We find no merit to this issue. When this witness was called by the State, defense counsel objected that he was being prejudiced by the late addition of the witness. Upon inquiry by the court, it was determined that the State had submitted an amended discovery response containing the witness's name on Thursday, July 16, 1992. Although trial commenced the following Monday, this rebuttal witness was not called until Friday, July 24, 1992, nearly eight days after his name was disclosed to the defense. Defense counsel still complained that the late disclosure constituted a discovery violation and that the court should exclude the witness's testimony. The court asked counsel to recommend an alternative remedy and to apprise the court of the nature and extent of the prejudice that this testimony would cause. The court also questioned counsel whether "any effort [was] made to determine the nature of [the witness's] testimony" after his identity was disclosed on July 16. Counsel responded: "I didn't see it. I didn't notice he was on [the witness list]." Following this exchange, the court extended counsel the opportunity to speak with and depose the witness prior to his testimony. Counsel declined this offer, indicating that he had already talked to the witness and also arguing that he could not effectively question the witness without the assistance of his two experts who had already left town. However, contrary to defense counsel's assertions, the record reveals a fairly extensive and rigorous cross-examination of this witness by defense counsel.
Based upon this record, we find that the State's disclosure of the identity of the rebuttal witness did not constitute a discovery violation. See Smith v. State, 515 So.2d 182, 183 (Fla. 1987) (submission of additional witness list on day of trial was not discovery violation), cert. denied, 485 U.S. 971, 108 S.Ct. 1249, 99 L.Ed.2d 447 (1988). However, we also find that the court followed Richardson by inquiring into the matter and granting defense counsel the right to question the witness. Any prejudice appears to be self-inflicted by counsel's failure to inquire into the nature of this witness's testimony before relinquishing the services of his own expert witnesses, and not because of any discovery violation by the State.
We also find no merit to Esty's claim that he is entitled to a new trial because the trial court failed to grant a mistrial after the prosecutor made improper comments during closing argument in the guilt phase. The control of the prosecutor's comments is within a trial court's discretion, and that court's ruling will not be overturned unless an abuse of discretion is shown. Durocher v. State, 596 So.2d 997, 1000 (Fla. 1992). In the instant case, the prosecutor described Esty as a "dangerous, vicious, cold-blooded murderer" and warned the jury that neither the police nor the judicial system can "protect us from people like that." Defense counsel immediately objected to these comments, requested a curative instruction, and moved for a mistrial. Although the trial court sustained the objection, it refused to grant a mistrial and instead instructed the jury to "disregard the last comments of the State attorney. You shall not consider that in any way whatsoever in your deliberations." We find no abuse of discretion by the trial court in denying Esty's motion for a mistrial as these comments were not so prejudicial as to vitiate the entire trial. See Duest v. State, 462 So.2d 446, 448 (Fla. 1985).
As his final guilt-phase issue, Esty argues that the court erred in giving the standard jury instruction on reasonable doubt. During the charge conference, defense counsel objected to the standard jury *1080 instruction on reasonable doubt, based upon his belief that the first two sentences are not "a correct statement of the law." Counsel further noted that a "constitutional challenge to those sentences" had very recently come to his attention. However, counsel cited no authority for such a challenge, did not elaborate as to the specific grounds for his objection, and did not submit an alternative instruction either in writing or orally. Prior to the jury's charge, counsel objected to the terms "possible doubt, a speculative, imaginary or forced doubt" in the standard instruction. The court acknowledged that it "understood that to be your objection earlier." Thus, contrary to the State's assertion, the court was apprised of the specific nature of the objection to the instruction, in satisfaction of the contemporaneous objection rule. See State v. Delva, 575 So.2d 643, 644 (Fla. 1991). However, merely raising an objection to the standard instruction is not sufficient to preserve the issue for review. Cf. James v. State, 615 So.2d 668 (Fla. 1993) (defendant preserved issue of constitutionality of instruction on heinous, atrocious, or cruel aggravator by objecting to standard instruction, asking for expanded instruction, and raising issue on direct appeal). In the instant case, counsel never requested that a different instruction be given and never submitted an alternative instruction. Thus, the issue has not been preserved for review.
Moreover, even if properly preserved, we would find no merit to this issue. "`[T]aken as a whole, the instructions correctly conveyed the concept of reasonable doubt to the jury.' There is no reasonable likelihood that the jurors who determined [Esty's] guilt applied the instructions in a way that violated the Constitution." Victor v. Nebraska, ___ U.S. ___, ___, 114 S.Ct. 1239, 1251, 127 L.Ed.2d 583 (1994) (citation omitted) (quoting Holland v. United States, 348 U.S. 121, 140, 75 S.Ct. 127, 138, 99 L.Ed. 150 (1954)); accord Brown v. State, 565 So.2d 304, 307 (Fla.), cert. denied, 498 U.S. 992, 111 S.Ct. 537, 112 L.Ed.2d 547 (1990), abrogated on other grounds, Jackson v. State, ___ So.2d ___, 19 Fla. L. Weekly S215 (Fla. Apr. 21, 1994).
After reviewing the record, we find that Esty's conviction is supported by competent, substantial evidence. Therefore, we affirm Esty's conviction for first-degree murder.

PENALTY PHASE
Esty raises three issues relating to the penalty phase of the proceedings: 1) override of the jury's life sentence recommendation was improper; 2) CCP aggravating factor was improperly found; and 3) failure to find that his age at time of murder (eighteen years old) was a mitigating factor. We find that the first issue requires reversal of Esty's death sentence, and thus do not address the remaining issues.
The jury recommended that Esty receive a life sentence without possibility of parole for twenty-five years.[8] The judge overrode the jury's recommendation because he concluded that this recommendation, "unless resulting from sympathy, could have been based only on minor, mitigating circumstances and was without any reasonable basis in the record."
For a trial judge to override a jury recommendation of life, "the facts suggesting a sentence of death should be so clear and convincing that virtually no reasonable person could differ." Tedder v. State, 322 So.2d 908, 910 (Fla. 1975). An override is improper if there is a reasonable basis in the record to support the jury's recommendation. Ferry v. State, 507 So.2d 1373, 1376 (Fla. 1987). The record in this case reveals a number of factors that support the jury's recommendation, including Esty's age of eighteen at the time of the murder, his lack of a criminal history, his potential for rehabilitation, and the possibility that he acted in an emotional rage. Thus, we conclude that jury override was improper because the jurors could have relied on these factors established in the record to recommend a life sentence in this case.
Accordingly, we affirm Esty's conviction for first-degree murder, vacate his death sentence, and remand for imposition of sentence *1081 of life imprisonment without eligibility for parole for twenty-five years.
It is so ordered.
GRIMES, C.J., OVERTON, SHAW, KOGAN and HARDING, JJ., and McDONALD, Senior Justice, concur.
NOTES
[1] Esty and his friends engaged in a sport called "boffoing" which involved sword fights with padded swords made from PVC pipe.
[2] § 921.141(5)(h), Fla. Stat. (1991).
[3] § 921.141(5)(i), Fla. Stat. (1991).
[4] § 921.141(6)(a), Fla. Stat. (1991).
[5] Richardson v. State, 246 So.2d 771 (Fla. 1971).
[6] Florida Rule of Criminal Procedure 3.390(b) provides in pertinent part:

Every charge to a jury shall be orally delivered, and charges in capital cases shall, and in the discretion of the court in noncapital cases may, also be in writing.
[7] Section 90.705, Florida Statutes (1991), provides:

(1) Unless otherwise required by the court, an expert may testify in terms of opinion or inferences and give his reasons without prior disclosure of the underlying facts or data. On cross-examination he shall be required to specify the facts or data.
(2) Prior to the witness giving his opinion, a party against whom the opinion or inference is offered may conduct a voir dire examination of the witness directed to the underlying facts or data for his opinion. If the party establishes prima facie evidence that the expert does not have a sufficient basis for his opinion, the opinions and inferences of the expert are inadmissible unless the party offering the testimony establishes the underlying facts or data.
[8] § 775.082(1), Fla. Stat. (1991).