848 So.2d 1031 (2003)
Oba CHANDLER, Appellant,
v.
STATE of Florida, Appellee.
No. SC01-1468.
Supreme Court of Florida.
April 17, 2003.
Rehearing Denied June 24, 2003.
*1033 Baya Harrison, Monticello, FL, for Appellant.
Charles J. Crist, Jr., Attorney General, and Candance M. Sabella, Senior Assistant Attorney General, Tampa, FL, for Appellee.
PER CURIAM.
Oba Chandler, a prisoner under sentence of death, appeals the trial court's denial of his motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850. We have jurisdiction. See art. V, § 3(b)(1), Fla. Const. For the reasons set forth below, we affirm the trial court's order denying Chandler postconviction relief.

BACKGROUND
Oba Chandler was charged with three counts of first-degree murder for the murder of Joan Rogers, and her two daughters, Michelle and Christe. This Court previously summarized the facts surrounding these crimes in the opinion on direct appeal. See Chandler v. State, 702 So.2d 186, 189-191 (Fla.1997).
On September 29, 1994, Chandler was found guilty of all three counts of firstdegree murder. The next day a penalty phase proceeding was held, and the jury unanimously recommended that Chandler be sentenced to death for each of the three murders. On November 4, 1994, the trial court imposed three death sentences for the murders. We affirmed Chandler's convictions and sentences on direct appeal. See id. at 189. The United States Supreme Court denied Chandler's petition for writ of certiorari on April 20, 1998. See Chandler v. Florida, 523 U.S. 1083, 118 S.Ct. 1535, 140 L.Ed.2d 685 (1998).
In June of 1998, Chandler filed an initial motion for postconviction relief under Florida Rule of Criminal Procedure 3.850. *1034 In May of 2000, Chandler filed an amended 3.850 motion asserting seven claims.[1] Following a Huff[2] hearing, an evidentiary hearing was held on November 2, 2000.[3] Thereafter, the trial court entered an order denying relief. This appeal follows.

ANALYSIS
On appeal, Chandler raises three claims: (1) the trial court erred in denying Chandler an evidentiary hearing regarding his claim that defense counsel was ineffective for failing to seek a venue change; (2) the trial court erred in failing to find that trial counsel was ineffective in dealing with evidence of a similar crime that was introduced at trial pursuant to Williams v. State, 110 So.2d 654 (Fla.1959), (Williams Rule evidence); and (3) the trial court erred in failing to find that trial counsel was ineffective for failing to object to various statements the prosecutor made in the guilt phase closing arguments.[4] We address each of these issues in turn.

CHANGE OF VENUE
The indictment in this case alleged that the murders occurred in either Pinellas County or Hillsborough County, Florida. Pursuant to section 910.03(1), Florida Statutes (1993), Chandler initially elected to be tried in Hillsborough County. Subsequently, Chandler's trial counsel filed a motion for change of venue, alleging that Chandler could not get a fair and impartial trial anywhere in the Tampa Bay area. Prior to hearing the motion, the trial court contacted defense counsel and the State to determine if the parties could reach an agreement to conduct the trial in Pinellas County. Pursuant to a new law, the trial court had the option of picking a jury from another county and bringing the jurors to Pinellas County for the trial. See § 910.03(3), Fla. Stat. (Supp.1994). Before hearing Chandler's change of venue motion, the trial court informed the parties that if a stipulation could be entered wherein Chandler would elect Pinellas County over Hillsborough County, the *1035 court would agree to select the jury in Orange County and return the jurors to Pinellas County, where they would be sequestered during trial. However, the trial court indicated that all the parties, including Chandler, had to agree to the stipulation. A hearing was held on the motion for change of venue, at which the court explained the stipulation to Chandler in great detail. After the hearing, the trial court entered an order explaining the stipulation and stating that the parties and Chandler had agreed to the stipulation.[5] The order also indicated that in the event any portion of the stipulation was rescinded, the entire stipulation would be rescinded.
In the order denying Chandler's current postconviction motion, the trial court stated that a subsequent motion to change venue objecting to the jury being picked in Orange County would have caused her to consider the previous stipulation void. The trial court also stated that if the stipulation had been voided, any change of venue motion that Chandler filed would have been held in abeyance while the court attempted to pick an impartial jury in Hillsborough County, the county of original venue. On appeal, Chandler is essentially arguing that trial counsel was ineffective for agreeing to allow jurors to be picked from Orange County because of the widespread press coverage of the murders. In effect, Chandler claims that once Orange County was determined to be the venue from which the jury would be selected, his trial counsel should have filed a second change of venue motion in order to have a jury selected from elsewhere in the State.
In denying Chandler relief on this claim, the trial court first determined that the underlying issue was procedurally barred. We agree. On direct appeal, Chandler did not challenge any members of the Orange County jury as being unfair or unable to be impartial. Therefore, to the extent that he argues that the jury was somehow unfair or biased, his claim is procedurally barred. See, e.g., Harvey v. Dugger, 656 So.2d 1253, 1256 (Fla.1995) (holding that claims that could have been brought in direct appeal were procedurally barred from being brought in postconviction proceedings); Swafford v. Dugger, 569 So.2d 1264, 1267 (Fla.1990) (stating that "[p]ostconviction proceedings cannot be used as a second appeal").
Furthermore, Chandler has not established either element of the test for establishing ineffective assistance of counsel. In order to prove an ineffective assistance of counsel claim, a defendant must establish two elements:
First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.
Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *1036 see also Wike v. State, 813 So.2d 12, 17 (Fla.2002); Rutherford v. State, 727 So.2d 216, 219-20 (Fla.1998); Rose v. State, 675 So.2d 567, 569 (Fla.1996). To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694, 104 S.Ct. 2052. Ineffective assistance of counsel claims present a mixed question of law and fact subject to plenary review based on the Strickland test. See Stephens v. State, 748 So.2d 1028, 1033 (Fla.1999). This requires an independent review of the trial court's legal conclusions, while giving deference to the trial court's factual findings. See id.
Generally, claims of ineffective assistance of counsel regarding change of venue are brought where counsel either did not file a change of venue motion, see, e.g., Buford v. State, 492 So.2d 355 (Fla. 1986), or where counsel failed to obtain a change of venue, see, e.g., Rolling v. State, 695 So.2d 278 (Fla.1997). Chandler, by way of comparison, was given an initial selection between Pinellas or Hillsborough counties based on the indictment, and was given the additional option of stipulating to have his jury selected from Orange County. Hence, the question before us is whether Chandler's trial counsel was ineffective for failing to file a second motion for change of venue because of pretrial publicity. With regard to when a change of venue is necessary to protect a defendant's rights, we have provided the following test:
The test for determining a change of venue is whether the general state of mind of the inhabitants of a community is so infected by knowledge of the incident and accompanying prejudice, bias, and pre-conceived opinions that jurors could not possibly put these matters out of their minds and try the case solely on the evidence presented in the courtroom.
The trial court in its discretion must determine whether a defendant has raised such a presumption of prejudice under this standard.... In exercising its discretion, a trial court must make a two-pronged analysis, evaluating: (1) the extent and nature of any pretrial publicity; and (2) the difficulty encountered in actually selecting a jury.
Rolling, 695 So.2d at 284-285 (citations omitted) (quoting McCaskill v. State, 344 So.2d 1276, 1278 (Fla.1977)). Furthermore, the existence of pretrial publicity in a case does not necessarily lead to an inference of partiality or require a change of venue:
[P]retrial publicity must be examined in the context of numerous circumstances, including; (1) when it occurred in relation to the time of the crime and the trial; (2) whether the publicity was made up of factual or inflammatory stories; (3) whether the publicity favored the prosecution's side of the story; (4) the size of the community; and (5) whether the defendant exhausted all of his peremptory challenges.
Foster v. State, 778 So.2d 906, 913 (Fla. 2000); see Rolling, 695 So.2d at 285. In the postconviction context where a defendant is claiming that counsel was ineffective with regard to a venue issue:
[T]he defendant must, at a minimum "bring forth evidence demonstrating that there is a reasonable probability that the trial court would have, or at least should have, granted a motion for change of venue if [defense] counsel had presented such a motion to the court." Meeks v. Moore, 216 F.3d 951, 961 (11th Cir.2000); see also Provenzano v. Dugger, *1037 561 So.2d 541, 545 (Fla.1990) (concluding that counsel was not ineffective for failing to renew the motion for change of venue because it was a tactical decision and because "it is most unlikely that a change of venue would have been granted because there were no undue difficulties in selecting an impartial jury").
Wike, 813 So.2d at 18. Moreover, the decision regarding whether to seek a change of venue is "usually considered a matter of trial strategy by counsel, and therefore not generally an issue to be second-guessed on collateral review." Rolling v. State, 825 So.2d 293, 298 (Fla.2002).
Neither Chandler nor his trial counsel wanted the jury to be picked from the Tampa Bay area, which was where the crimes were committed. The trial judge in her order denying Chandler postconviction relief stated that both Chandler and his trial counsel knew that she would try to pick the jury from Hillsborough County before granting a change of venue.[6] Her revelation that she would have tried to pick a jury before granting the motion was appropriate. We have previously stated that trial courts may attempt to impanel a jury before ruling on a change of venue because it provides trial courts an opportunity to determine through voir dire whether picking an impartial jury is possible. See Foster v. State, 778 So.2d 906, 913 (Fla.2000); Henyard v. State, 689 So.2d 239, 245 (Fla.1996); Davis v. State, 461 So.2d 67, 69 n. 1 (Fla.1984); Manning v. State, 378 So.2d 274, 276 (Fla.1979). Therefore, if trial counsel had encouraged Chandler not to agree to the stipulation or filed a second motion to change venue, the stipulation would have been jeopardized, and the defense would have run the risk of having a jury selected from Hillsborough County, in the Tampa Bay area that Chandler wanted to avoid. Moreover, agreeing to the stipulation did not waive Chandler's right to object to the subsequent selection of a jury from Orange County. Trial counsel testified at the evidentiary hearing that if he had not been able to select a jury in Orange County, he would have moved for a change of venue at that point.[7]
Furthermore, Chandler has not brought forth evidence demonstrating that there is a reasonable probability that the trial court would have, or at least should have, granted a motion for change of venue if defense counsel had presented such a motion to the court. See Provenzano v. Dugger, 561 So.2d 541, 545 (Fla.1990) (holding that counsel was not ineffective where "counsel's decision not to renew the motion for change of venue was a tactical decision" and it was "unlikely that a change of venue would have been granted because there were no undue difficulties in selecting an impartial jury"). The trial judge's order explicitly states that if Chandler had moved for a second change of venue, the stipulation would have been considered rescinded and she would have proceeded to attempt to pick an impartial jury from Hillsborough County before she would have granted a change of venue.
*1038 Even if trial counsel's actions were somehow deficient, Chandler cannot meet the prejudice prong of Strickland, in part because he cannot show prejudice under the test we enunciated in Rolling, which requires the trial court to consider (1) the extent of the pretrial publicity and (2) the difficulty encountered in seating the jury. See Rolling, 695 So.2d at 285.[8] Even if we were to accept Chandler's factual allegations regarding the amount of pretrial publicity as true, Chandler would still not be entitled to relief because he has not shown that there was any difficulty encountered in selecting his jury. In denying the claim, the trial court referred to three facts in particular:
1) Only 4 of the 12 jurors who served knew anything about this case. None of them had formed any opinion about the guilt or innocence of the defendant. 2) In this case that was to last four weeks, with jurors having to come to Pinellas County from Orange County and be sequestered for the entire time, it only took 1½ days to pick a jury. 3) Neither side exercised all its preemptory [sic] challenges, with Chandler choosing to exercise only 4 of his 10 challenges.
Our examination of the jury selection process in this case supports the trial court's observation that an impartial jury was seated with relative ease. Most of the prospective jurors who were questioned indicated that they had not heard about the case.[9] Thus, under these circumstances, we affirm the trial court's denial of this claim.

WILLIAMS RULE EVIDENCE
Next, Chandler claims that trial counsel was ineffective because of the strategy he utilized for dealing with Williams Rule evidence. On direct appeal, *1039 we summarized the facts regarding the Williams Rule evidence:
Judy Blair and her friend, Barbara Mottram, both Canadian tourists, testified regarding Chandler's rape of Blair several weeks prior to the Rogers' murders. After meeting the women at a convenience store, Chandler, who identified himself as "Dave," arranged to take them out on his boat the next day. The following morning, May 15, 1989, Mottram decided not to go out on Chandler's boat, so Blair met Chandler alone. Blair testified that Chandler seemed disappointed when told Mottram would not be joining them. After boating for several hours, Blair and Chandler returned to the dock. Chandler asked Blair to get Mottram to join them for an afterdinner boat trip.
Again, Blair could not convince Mottram to join them. Blair testified that Chandler seemed "ticked off" when she told him Mottram would not be joining them. Subsequently, Chandler began making advances to Blair after the boat entered the Gulf of Mexico. Despite Blair's refusals and attempts to resist him, Chandler raped her. Chandler and Blair then returned to shore. The next day, Blair told Mottram what happened and reported the rape to the police. At trial, she identified the clothing Chandler had been wearing that night. Mottram picked Chandler's photograph out of a photo pack and identified him in a lineup and in court.
. . . .
When asked about details surrounding the rape of Judy Blair, Chandler invoked his Fifth Amendment right to remain silent twenty-one times, although he did answer some questions regarding his perception of the link between the rape and the murders.
Chandler, 702 So.2d at 189-91.
The introduction of the Williams Rule evidence was thoroughly addressed in Chandler's direct appeal. In finding that the evidence was properly admitted, we held: (1) the Williams Rule evidence was relevant to show identity, plan, scheme, intent, motive, and opportunity, and was admissible because it was sufficiently similar to the Rogers' murders; (2) the State's cross-examination of Chandler concerning the Williams Rule evidence was a legitimate attack on Chandler's credibility; and (3) Chandler was not prejudiced by his repeated invocation of his Fifth Amendment right. Chandler, 702 So.2d at 192-97.
Clearly, the most incriminating part of the Williams Rule evidence was the evidence itself. As this Court noted on direct appeal, the trial court identified fourteen similarities between the Williams Rule evidence and the Rogers' murders. Id. at 193-94.[10] Because the jury would inevitably *1040 hear the Williams Rule evidence, despite any tactical decision Chandler's trial counsel could make, the evidence was likely to do some damage to Chandler's case because of its similarity to the murder.
Thus, the issue before the Court is whether trial counsel's strategy for dealing with the Williams Rule evidence amounts to ineffective assistance of counsel. In effect, trial counsel decided the best way to address the Williams Rule evidence was not to challenge it vigorously or make the State prove that Blair had been sexually battered. Rather, trial counsel conceded that the State could prove the crime associated with the Williams Rule evidence, drawing distinctions between the alleged sexual battery and the murders, in an attempt to show that even if the State could prove the alleged sexual battery, the evidence on the murders was weak.[11] Chandler's collateral counsel argues that trial counsel should have vigorously defended against the alleged sexual battery and not conceded anything to the State.[12]
Admittedly, on its face, trial counsel's strategy might raise doubts as to its efficacy. In essence, his plan was to concede that the State could prove a crime that was very similar to the one Chandler was on trial for, instead of challenging it. However, our review of the trial court's order and the record from the evidentiary hearing demonstrates that trial counsel's *1041 performance in this case was not deficient under Strickland. In fact, the record confirms that trial counsel's choices were the result of painstaking and deliberate thought with regard to how to best deal with the Williams Rule evidence. Even though collateral counsel disagrees with trial counsel's strategy for dealing with the Williams Rule evidence, this disagreement does not place trial counsel's decision on how to deal with the evidence outside the realm of reasonably effective assistance of counsel. See Occhicone v. State, 768 So.2d 1037, 1048 (Fla.2000) ("Counsel cannot be deemed ineffective merely because current counsel disagrees with trial counsel's strategic decisions."). Furthermore, the fact that trial counsel's tactics did not secure the result defendant wanted does not mean that collateral counsel, who has the benefit of hindsight, can label trial counsel ineffective for failing to use an alternative tactic. Strickland, 466 U.S. at 689, 104 S.Ct. 2052 ("A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."); see also Cherry v. State, 659 So.2d 1069, 1073 (Fla.1995) ("The standard is not how present counsel would have proceeded, in hindsight...."). This Court has repeatedly stated that "strategic decisions do not constitute ineffective assistance of counsel if alternative courses have been considered and rejected and counsel's decision was reasonable under the norms of professional conduct." Occhicone, 768 So.2d at 1048; see Shere v. State, 742 So.2d 215, 220 (Fla.1999); State v. Bolender, 503 So.2d 1247, 1250 (Fla. 1987).
Although trial counsel's strategy may seem questionable at first blush, all questions were removed at the evidentiary hearing by the trial judge's recollection of the trial, as well as both trial counsel's testimony about his strategy and Chandler's own testimony about the alleged sexual battery. At the evidentiary hearing, trial counsel gave a well-founded explanation for why he thought his strategy for dealing with the Williams Rule evidence was appropriate. Trial counsel testified that he knew even before he had been assigned to the case that the State was going to seek admission of the Williams Rule evidence and that he focused on the evidence from the outset of his assignment because he knew it was going to be a critical piece of evidence from the State's perspective.[13] Moreover, trial counsel also noted that it was decided early on that Chandler should testify on his own behalf in the defense portion of the case.[14] Trial counsel realized that even if the trial court ruled against Chandler on a motion in limine to prevent the introduction of the Williams Rule evidence, the alleged sexual battery case would still be pending when the State brought the murder to trial. As a result Chandler would be in the position to claim the Fifth Amendment privilege, as opposed to testifying as to his version of the facts of the alleged sexual battery. Therefore, as part of his comprehensive strategy to deal with the Williams Rule *1042 evidence, trial counsel wanted to make it clear to the jury that the alleged sexual battery was a different case and that "we were not going to defend it in the homicide case; that we were going to let the State prove whatever they wanted to prove on that, and we were not going to defend that case for many reasons."
At the evidentiary hearing, trial counsel also testified that having Chandler deny the alleged sexual battery on the stand would have been detrimental to Chandler's defense of the murder. Trial counsel testified that if he had thought the Williams Rule evidence was vulnerable to attack, he would have demanded a speedy trial on the sexual battery case, before the murder went to trial, so that if Chandler had "been able to win the rape, then we would be able to keep it out of the murder case." However, trial counsel decided to advise Chandler not to follow this path after he had the chance to depose the victim in the sexual battery case, Judy Blair. Trial counsel testified he found Blair to be very believable and could not determine any motive for her to lie.[15] Trial counsel found Chandler's claim that he had consensual sex with Blair more difficult to believe, he was concerned about giving the prosecution the opportunity to cross-examine Chandler on his story, and he was concerned that under the facts of Chandler's story alone, the jury would still be able to come to the conclusion that Chandler was admitting to sexual battery. Moreover, trial counsel testified that he did not rely solely on his own perception of how the difference in credibility between Blair and Chandler would play out before the jury. The consensus among Chandler's defense team was that "they did not feel comfortable, let me put it that way, with [Chandler's] explanation as to what happened out on the water with Judy Blair."
Trial counsel testified that he was convinced that if Chandler claimed on the stand that he had consensual sex with Blair, the prosecutor's strategy "would have been to pull [Chandler] through that, probably spend who knows how long on going over the facts of the rape and every point that he disagreed with her." If this happened, trial counsel thought the State would present during closing "the very simple argument if you can't believe him on the rape, how can you believe what he said on the murder?" Recognizing that Chandler was going to testify and wanted to testify, trial counsel said that it was critical that Chandler's credibility be preserved, but he testified that in his opinion, pitting Chandler's credibility against Blair's would have been "suicidal to his chances of winning the murder case." Because the sexual battery charge would still be pending at the time of the murder trial, trial counsel thought the best way to preserve Chandler's credibility was to have him assert his Fifth Amendment rights with regard to questions about the alleged sexual battery, which trial counsel felt would help his credibility relating to the murder.
Trial counsel's fears about Chandler's version of events were supported by Chandler's *1043 testimony at the evidentiary hearing. During cross-examination, Chandler admitted within the context of his version of events that he did not stop having sex with Blair after she demanded that he stop because "he wanted to complete the act" and in his opinion he "was entitled to finish." The trial court made an apt observation about Chandler's evidentiary hearing testimony:
For me, personally, a very damaging portion of [Chandler's] testimony about the Blair rape was his lack of respect almost disdainfor Judy Blair. Having sat through the murder trial, it was extremely difficult to imagine anyone having such hatred/disdain for women that he could have done what was done to the Rogers women. Mr. Chandler let some of that part of his personality appear when he testified about the Blair rape. This would have been devastating for the jury to see and hear in the murder trial.
I conclude this part of the order convinced that [trial counsel's] strategy was correct as to his handling of the entire Williams Rule issue, including conceding in his opening statement that the state could prove the rape, as he was not there to defend it, but was going to defend the murder charge.
We agree with the trial court's characterization of Chandler's evidentiary hearing testimony. Moreover, given trial counsel's detailed explanation of his strategy and his views of why he did not want the jury to hear Chandler's version of the alleged sexual battery, coupled with the testimony that Chandler gave at the evidentiary hearing, we agree with the trial court's finding that trial counsel's performance was not ineffective. Thus, while trial counsel's handling of this issue may have differed from collateral counsel, trial counsel's strategic decisions under these circumstances do not amount to ineffective assistance of counsel. We affirm the trial court's denial of relief on this claim.

PROSECUTOR'S COMMENTS
Finally, Chandler cites multiple instances of allegedly improper prosecutorial comments during the guilt phase closing argument.[16] He asserts that trial counsel's failure to object to these comments constituted prejudicial error.[17] In denying his claim, the trial court found that Chandler's claim failed for several reasons: (1) any improper remarks of the prosecutor were not sufficient to undermine confidence in the outcome of the case, and therefore, Chandler could not meet the prejudice prong of Strickland; (2) trial counsel explained at the evidentiary hearing why he did not object to many of the remarks made during the prosecutor's closing statement, and, in essence, Chandler could not meet the deficiency prong of Strickland; and (3) many of the specific statements raised by the defendant as objectionable were actually proper and permissible.
*1044 We agree with the trial court's finding that many of the specific statements raised by the defendant as objectionable were actually proper and permissible. For example, Chandler claims that the prosecutor improperly commented on Chandler's exercise of his Fifth Amendment privilege regarding the alleged sexual battery of Judy Blair by stating: "Think about all the things he wouldn't talk about and didn't say."[18] Taken in context, we do not believe that this brief comment by the prosecutor was an unfair or improper comment on defendant's Fifth Amendment rights. In Dabney v. State, 119 Fla. 341, 161 So. 380 (1935), the Court stated:
The settled rule is that if a defendant declines to become a witness in his own behalf, then the prosecuting attorney shall not comment on such course being taken by the defendant. In other words, the failure of the defendant to testify cannot be taken or considered as any admission against his interest; but, if a defendant voluntarily takes the stand and testifies as a witness in his own behalf, then he becomes subject to cross-examination as any other witness, and the prosecuting officer has the right to comment on his testimony, his manner and demeanor on the stand, the reasonableness or unreasonableness of his statements, and on the discrepancies which may appear in his testimony to the same extent as would be proper with reference to testimony of any other witness.
Id. at 381.[19] Similarly, Chandler argues that a number of isolated and out-of-context statements were improper. In the statements cited, the prosecutor used words and phrases such as "desperation, distortion, and half-truths," "charade," and "totally irrational" to characterize defense counsel's arguments as misleading. Although some of the descriptions by the prosecution may have been poorly chosen and more harsh than necessary, the statements were made in reference to defense claims that the prosecutor felt were legally or factually inaccurate or logically inconsistent. Therefore, even if these statements were poorly expressed, they were not improper.
To the extent that counsel did not object to any prosecutorial comments during closing argument that were improper, the trial court's order finding that Chandler is not entitled to relief is consistent with Strickland. In Strickland, the United States Supreme Court stated:
Because of the difficulties inherent in making the evaluation [of ineffectiveness], a court must indulge a strong presumption that counsel's conduct falls *1045 within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."
Strickland, 466 U.S. at 689, 104 S.Ct. 2052 (quoting Michel v. Louisiana, 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955)). See also Ventura v. State, 794 So.2d 553, 568 (Fla.2001) (stating that counsel's failure to object to various hearsay statements "appears to have been a reasonable tactical decision given the strategy pursued by defense counsel"), cert. denied, 535 U.S. 1098, 122 S.Ct. 2296, 152 L.Ed.2d 1054 (2002). We agree that the decision not to object to improper comments is fraught with danger and may not be wise strategy because it might cause an otherwise appealable issue to be considered procedurally barred. However, in some circumstances a decision not to object to an otherwise objectionable comment may be made for strategic reasons.[20]
However, even if trial counsel was deficient for failing to object to the statements at issue, we agree with the trial court's determination that Chandler has not established prejudice under the second prong of Strickland. In Chandler's direct appeal, with regard to the prosecutor's comments during closing arguments, we noted:
The prosecutor's comment that Chandler never told his daughters or son-in-law that he was innocent was a fair characterization of the evidence, while his other comments about Chandler and his counsel were thoughtless and petty, e.g., counsel engaged in "cowardly" and "despicable" conduct and Chandler was "malevolent ... a brutal rapist and conscienceless murderer," but not so prejudicial as to vitiate the entire trial. Esty v. State, 642 So.2d 1074, 1079 (Fla.1994); Bertolotti v. State, 476 So.2d 130 (Fla. 1985).
Chandler, 702 So.2d at 191 n. 5. Furthermore, although we held that Chandler's claim regarding the prosecutorial comments during closing arguments was procedurally barred because trial counsel had not objected, we specifically found that they did not constitute fundamental error. Chandler, 702 So.2d at 191. In Spencer v. State, 842 So.2d 52 (Fla. 2003), we recently explained:
In order for an error to be fundamental and justify reversal in the absence of a timely objection, "the error must reach down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error." Brown v. State, 124 So.2d 481, 484 (Fla. 1960); see also State v. Delva, 575 So.2d 643, 645 (Fla.1991). In order for improper comments made in the closing arguments of a penalty phase to constitute fundamental error, they must be so prejudicial as to taint the jury's recommended sentence.
*1046 Id. 842 So.2d at 74. Because Chandler could not show the comments were fundamental error on direct appeal, he likewise cannot show that trial counsel's failure to object to the comments resulted in prejudice sufficient to undermine the outcome of the case under the prejudice prong of the Strickland test. See Strickland, 466 U.S. at 694, 104 S.Ct. 2052.
The instant case is similar to Thompson v. State, 759 So.2d 650, 664 (Fla.2000), in which the defendant claimed defense counsel was ineffective for failing to object to several improper remarks by the prosecutor. This Court stated that "[b]ecause none of these prosecutorial comments would have constituted reversible error had they been objected to at trial, we affirm the trial court ruling summarily denying this claim." Id. at 664. Similarly, because we have previously held that the prosecutor's comments in this case did not constitute fundamental error, even though some of the prosecutor's comments in this case were ill-advised, they were not so prejudicial as to vitiate the entire trial. Thus, Chandler is not entitled to relief on this claim.

CONCLUSION
For the reasons stated above, we affirm the trial court's denial of postconviction relief.
It is so ordered.
ANSTEAD, C.J., WELLS, PARIENTE, LEWIS, QUINCE, and CANTERO, JJ., and SHAW, Senior Justice, concur.
NOTES
[1] The amended motion contained seven claims of ineffective assistance of counsel: (1) failure to prevent the prosecutor from making improper, prejudicial arguments to the jury; (2) ineffective assistance in dealing with the matter of venue; (3) failure to protect Chandler regarding the admission of evidence of a similar crime that was admitted pursuant to Williams v. State, 110 So.2d 654 (Fla.1959); (4) failure to protect the defendant from cross-examination regarding the similar crime evidence; (5) failure to investigate and present the defense that someone else had committed the homicides; (6) failure to investigate and present an expert witness to rebut the State's expert witness on boat fuel lines; and (7) counsel caused prejudicial statements regarding Chandler to be entered at trial.
[2] Huff v. State, 622 So.2d 982 (Fla.1993).
[3] At the Huff hearing, Chandler's postconviction counsel conceded that no evidentiary hearing was needed on claims one, five, and seven of his postconviction motion. Additionally, postconviction counsel abandoned claim six regarding the fuel line expert, after announcing that he had investigated the claim very carefully and could find no good faith basis for the claim.
[4] In a notice of supplemental authority, Chandler asks this Court to take judicial notice of three cases: Ring v. Arizona, 534 U.S. 1103, 122 S.Ct. 865, 151 L.Ed.2d 738 (2002), State v. Ring, 200 Ariz. 267, 25 P.3d 1139 (2001), and Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). Aside from filing the notice, Chandler provides no argument other than that the cases "may be relevant to the issues raised in this cause." Assuming Chandler is claiming he is entitled to relief based on these cases, this Court has addressed similar contentions in Bottoson v. Moore, 833 So.2d 693 (Fla.2002), cert. denied, 537 U.S. 1070, 123 S.Ct. 662, 154 L.Ed.2d 564 (2002), and King v. Moore, 831 So.2d 143 (Fla.2002), cert. denied, 537 U.S. 1067, 123 S.Ct. 657, 154 L.Ed.2d 556 (2002), and denied relief. We find that Chandler is likewise not entitled to relief.
[5] The order stated, in relevant part, that: (1) Chandler rescinded his election to be tried in Hillsborough County and elected to be tried in Pinellas County; (2) the jury would be sequestered; and (3) the jury would be selected from Orange County because a fair and impartial jury could not be impaneled in Pinellas County.
[6] At the evidentiary hearing, trial counsel agreed that the judge was "absolutely correct" after she explained the nature of the stipulation:

What I wanted to make sure is clear on this record is [the stipulation] was a package. If Mr. Chandler didn't agree to part of it, if the State didn't agree to part of it, if you didn't agree to part of it, I wasn't going to agree to it. We were going to go to Hillsborough County where I believed we could pick a jury and get the case done.
[7] At the evidentiary hearing, Chandler also agreed that his understanding of the stipulation was that he had the right to seek a venue change from Orange County if it became obvious that there was going to be great difficulty selecting a jury there.
[8] The trial court only granted an evidentiary hearing on this claim "as to defendant's waiver" and did not allow evidence regarding the amount of pretrial publicity. Because the trial court did not hold an evidentiary hearing on the amount of pretrial publicity, the only information in this record regarding the extent and nature of pretrial publicity comes in the way of the supplemental record, which includes the report prepared by Chandler's media expert. This Court has summarized the applicable standard when reviewing a summary denial of a postconviction motion:

[A] defendant is entitled to an evidentiary hearing on a postconviction relief motion unless (1) the motion, files, and records in the case conclusively show that the prisoner is entitled to no relief, or (2) the motion or a particular claim is legally insufficient. The defendant bears the burden of establishing a prima facie case based upon a legally valid claim. Mere conclusory allegations are not sufficient to meet this burden. However, in cases where there has been no evidentiary hearing, we must accept the factual allegations made by the defendant to the extent that they are not refuted by the record. We must examine each claim to determine if it is legally sufficient, and, if so, determine whether or not the claim is refuted by the record.
Freeman v. State, 761 So.2d 1055, 1061 (Fla. 2000) (citations omitted). Because we find that Chandler's claim is refuted by the record, we agree that there was no need for an evidentiary hearing on the amount of pretrial publicity in the case.
[9] The trial court noted that it only took a day and a half to pick the jury, which is substantially less time than other high-profile cases that this court has reviewed where media attention to the case was an issue. See, e.g., Rolling, 695 So.2d at 287 (stating that jury selection "spanned a three-week period"). Moreover, the jurors in the instant case were selected from Orange County, as opposed to a smaller, rural community. This Court has stated that in determining the prejudicial impact of intense publicity the size of the community is a factor to be considered. See, e.g., Copeland v. State, 457 So.2d 1012, 1017 (Fla. 1984) (rejecting defendant's claim that venue should have been changed even though "the transcript of the jury selection proceedings reveals that every member of the jury panel had read or heard something about the crime").
[10] The fourteen similarities were:

(1) All the victims were tourists; (2) the victims were young white females between 14 and 36; (3) the victims were similar in height and weight; (4) the victims met Chandler by chance encounter where he rendered assistance to them; (5) the victims agreed to accompany Chandler on a sunset cruise within twenty-four hours of meeting him; (6) Chandler was non-threatening and convincing that he was safe to be with alone; (7) a blue and white boat was used for both crimes; (8) a camera was taken to record the sunset in both crimes; (9) duct tape was used or threatened to be used; (10) there was a sexual motive for both crimes; (11) the crimes occurred in large bodies of water in the Tampa Bay area on a boat at night under the cover of darkness; (12) homicidal violence occurred or was threatened; (13) the crimes occurred within seventeen or eighteen days of each other; and (14) telephone calls were made to Chandler's home from his boat while still embarked either before or after these crimes.
Chandler, 702 So.2d at 193-94.
[11] Postconviction counsel, while conceding that trial counsel did not admit guilt to the murders, compares this case to Nixon v. Singletary, 758 So.2d 618 (Fla.2000), wherein the Court held that defense counsel must have defendant's consent before counsel can make a tactical decision to admit guilt of murder during the guilt phase of a trial in an effort to persuade the jury to spare defendant's life during the penalty phase. See id. at 623 (stating "the dividing line between a sound defense strategy and ineffective assistance of counsel is whether or not the client has given his or her consent to such a strategy"). Even though he did not concede guilt to the murders, given the similarities between the murders and the alleged sexual battery, trial counsel's decision should still be closely scrutinized. In effect, trial counsel did concede Chandler's guilt in the Blair case. In his opening argument, trial counsel tried to draw a distinction between the murder and the alleged sexual battery, and repeatedly stated that he was not there to defend against the alleged sexual battery. Finally, in summing up his opening argument, trial counsel stated, "And ladies and gentlemen, in conclusion, the State is going to be able to prove, at least for their caseokay?the State will probably be able to prove to you the Madeira Beach rape. And, again, I ask you to keep that separate." At the evidentiary hearing, Chandler's trial counsel testified that this opening statement was part of the strategy to keep Chandler's Fifth Amendment rights intact and that if he had denied the alleged sexual battery in his opening it might have opened the door to the State to cross-examine Chandler on it.

Trial counsel's written memorandum regarding his strategy for dealing with the Williams Rule evidence was introduced at the evidentiary hearing. Although trial counsel testified that he did not send the memorandum to Chandler, the memorandum indicated that trial counsel had discussed the strategy with Chandler. Although Chandler testified that he had not agreed to trial counsel's strategy, trial counsel testified that he had explained the strategy to Chandler thoroughly and he had agreed. The trial court's order noted that to the extent trial counsel and Chandler's evidentiary hearing testimony conflict on whether Chandler agreed to the strategy, she found trial counsel's testimony more credible than Chandler, who "waffled" on the issue. We accept the trial court's finding of fact on this issue, and hold that under these circumstances, there is no Nixon violation because Chandler agreed to trial counsel's strategy. See Stephens v. State, 748 So.2d 1028, 1034 (Fla.1999) (recognizing trial court's superior vantage point in assessing credibility of witnesses).
[12] Chandler had not been tried or convicted for the alleged sexual battery. Sometime after Chandler's conviction on the murders, the State decided not to pursue charges associated with the alleged sexual battery.
[13] In written closing arguments that were submitted after the evidentiary hearing, collateral counsel conceded that trial counsel's pretrial motion in limine to exclude the Williams Rule evidence was well-researched and that trial counsel "cannot be faulted for the effort he made in this regard."
[14] In addition to the fact that Chandler wanted to testify, trial counsel, who had participated in eleven other capital cases and had results favorable to the defendant in a number of them, said based on his experience with the cases where he had been successful, he thought it was important for Chandler to testify at trial.
[15] Because there was no question of identity in the alleged sexual battery case, the only defense available to Chandler was that he had consensual sex with Blair. At the evidentiary hearing, trial counsel testified at length about his perception of Blair's credibility and appearance. Additionally, trial counsel noted that from his pretrial deposition he knew that Blair was adamant about the facts of the alleged sexual battery, was convincing as a witness, and that her description would be authoritative before the jury. In summing up his thoughts, trial counsel stated, "If they were ever going to make a mold of what the State wants to bring to court for a rape victim, that mold is going to be this lady. It's going to be Judy Blair."
[16] Chandler organizes the numerous allegedly improper comments into four broad categories: (1) improper comments on Chandler's exercise of his Fifth Amendment privilege regarding the alleged sexual battery; (2) improper attacks on defense counsel and his theory of the case; (3) improper statements of the prosecutor's personal opinions and beliefs; and (4) improper personal attacks on Chandler.
[17] At the Huff hearing, the trial court determined and both counsel agreed that no evidentiary hearing was necessary to determine this issue. However, at the Huff hearing, the trial court indicated that the parties could inquire of trial counsel as to any strategic decisions he made in not objecting to the prosecutor's closing arguments.
[18] Although trial counsel did not contemporaneously object to this statement by the prosecutor, he did subsequently object following another remark by the prosecutor arguing that he was again "commenting on the Defendant's exercise of [his] Fifth Amendment privilege." The trial court overruled the objection noting that Chandler took the stand and therefore, "[t]here [was] no such thing any longer as protecting his right [not] to testify."
[19] Cf. United States v. Weber, 437 F.2d 327 (3d Cir.1970). In Weber, the Third Circuit, in an admittedly different context, stated:

[O]nce a defendant takes the witness stand he waives his Fifth Amendment privilege and makes himself liable to cross-examination as an ordinary witness. Moreover, it is permissible, even in a trial upon a multicount indictment, for the court to charge that a jury may draw an inference of guilt from a defendant's silence when the defendant testifies as to some facts, but refrains from testifying as to other facts within his knowledge. Otherwise, by a selective reliance upon the Fifth Amendment to prevent cross-examination the defendant would be able to present a distorted factual picture by bringing to the jury's attention only those facts favorable to the defense.
Id. at 334-35 (citations omitted).
[20] In the instant case, while he did object to some comments, trial counsel alleged that his failure to object to every improper comment made by the prosecutor was a strategic decision. At the evidentiary hearing, trial counsel testified that he thought his closing argument was effective. Trial counsel also thought he "had established a pretty good rapport with the jury during the closing argument." Trial counsel also stated, "in general I don't like to jump up all the time anyway. I think it looks bad in front of the jury when you're continually jumping up and interrupting the other side's closing argument." Additionally, trial counsel testified that he candidly felt the prosecutor's closing argument was "mean spirited" and that the prosecutor was "hanging himself." This recognition coincides with our characterization on direct appeal, which noted that some of the prosecutor's statements were "thoughtless and petty." Chandler, 702 So.2d at 191 n. 5.